IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| NELVETTE SIEMION, DBA/White Buffalo Ranch,<br><br>                    Plaintiff,<br><br>      vs.<br><br>VIANNA STEWERT, DEBBIE SCOTT, CLARA HUGS, TY TEN BEAR, PATRICIA BUGAS-HARRIS, MARTIN ANSETH, WILLIAM HE DOES IT, PHOEBE KNAPP-WARREN, PAUL WARREN, SAM REDDING, LELAND WALKING BEAR, KELLY DEE PASSES, CEDRIC BLACK EAGLE, LARRY TOBACCO, WILLIAM F. SNELL III PRETTY SHIELD,  CODY WILHELM, CHAZ BENDS, VERNON HILL, PETE MOLINA, DIANE CABRERA, and PARTIES UNKNOWN,<br><br>                    Defendants. | CV 11-120-BLG-RFC-CSO<br><br>**ORDER and FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Nelvette Siemion ("Siemion"), appearing *pro se*, filed her

Amended Complaint on January 30, 2012, listing 14 counts.  *Am.*

*Cmplt. (Court Doc. 32)*.  This action stems from three general

-1-

allegations that one or more of the named Defendants wrongfully (1) deprived Siemion of Crow Tribal land leases to which she was entitled; (2) rounded up, seized, and impounded about 200 head of Siemion's bison causing her to incur penalties and costs to recover them; and (3) killed, butchered, and distributed the meat from three of Siemion's bison bulls.  The claims and the defendants against whom Siemion asserts them are discussed in more detail below.

The following motions, listed in the order filed, are now ripe:

1.   Motion to dismiss under Rule 12(b)(1)[1] filed by Defendant Pete Molina ("Molina"), *Court Doc. 34*;

2.   Motion to substitute the United States, to dismiss under Rules 12(b)(1), (6), and (7), and for summary judgment under Rule 56(a) (on Administrative Procedure Act Claims) filed by Defendants Debbie Scott, Clara Hugs, Vianna Stewert, Ty Ten Bear, and William He Does It (the "Federal Defendants"), *Court Doc. 41*;

3.   Motion to dismiss under Rules 12(b)(1) and (6) filed by Defendants Cedric Black Eagle, Larry Tobacco, William F. Snell, III, Cody Wilhelm, Chaz Bends, Vernon Hill, Thomas Hill,[2] and Diane

---

[1]References to rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

[2]Siemion's Amended Complaint names in its caption all of the same Defendants named in the original complaint except for Thomas Hill, who was previously named and identified as "son of [Defendant] Vernon Hill[.]"  *Court Doc. 1 at 1*.  Siemion lists Thomas Hill, however,

Cabrera (the "Tribal Defendants"), *Court Doc. 42*;

4.    Motion to dismiss under Rules 12(b)(1), (6), and (7), for misjoinder of parties under Rule 21, for a more definite statement under Rule 12(e), and for a determination that the action was brought for an improper purpose under Rule 11(b)(1) filed by Defendants Patricia Bugas-Harris, Martin Anseth, William He Does It, Phoebe Knapp-Warren, Paul Warren, Sam Redding, and Leland Walking Bear (the "Private Defendants"), *Court Doc. 45*; and

5.    Siemion's motion for a hearing on Defendant Molina's motion to dismiss, *Court Doc. 55*.

The Court notes that, on March 26, 2012, Siemion filed a document styled "Plaintiff[']s Opposition To Defendant, Pete Molina's Reply Brief in Support of Motion to Dismiss Received by Plaintiff on March 6, 2012, and Plaintiff[']s Motion for Hearing." *Court Doc. 55*. Also, on April 11, 2012, Siemion filed a document styled "Plaintiff[']s Opposition to Individual Federal Defendant's [sic], Debbie Scott, Ty Ten Bear, Clara Hugs and Vianna Stewart's Reply Brief In Support of Motion To Substitute United States, Motion to Dismiss and for Summary Judgment, and Plaintiff[']s Motion for Hearing." *Court Doc.*

---

as a person against whom Count 10 of her Amended Complaint is asserted. *Court Doc. 32 at 18*. The Court proceeds herein under the assumption that Siemion intends to maintain her claims against Thomas Hill.

*56.* To each of these filings, Siemion attached several unauthenticated exhibits.

Local Rule 7.1(d)(1) allows for only one response and one reply to any motion filed. Local Rule 7.1(d)(1)(D) specifically provides that "[n]o further briefing is permitted without prior leave." Siemion has not sought and has not been granted leave to file additional briefs or exhibits respecting any of the pending motions. Accordingly, the Court has not considered them herein.

Also, in both filings, Siemion requested a hearing on the motions that were the subject of these supplemental filings. The requests for hearings will be denied because in this Court's opinion, a hearing will not aid the Court's decision. See Rule 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Having considered the parties' briefs and submissions respecting the remaining motions, the Court enters the order and findings and recommendations discussed below.

## I.   <u>BACKGROUND</u>

The procedural background is detailed in the record. *See Order*

*filed Jan. 10, 2012 (Court Doc. 29); Order filed Feb. 1, 2012 (Court Doc. 33)*.  The Court repeats it here only as necessary to explain this ruling.

The factual background is rather complicated.  The allegations concern distinct events that sometimes overlap, span several years, and involve multiple parties.  In attempting to place Siemion's claims into a coherent context, the Court compiled the factual background that follows from: (1) Siemion's Amended Complaint; (2) the Statement of Undisputed Facts (*Court Doc. 25*) and documents that the Federal Defendants filed in conjunction with an earlier motion, including the Administrative Record for Siemion's two administrative appeals to the Interior Board of Indian Appeals (*Court Doc. 22*); and (3) multiple exhibits attached to the original Complaint filed in this action and organized by a "Table of Contents of Exhibits Supporting Plaintiffs [sic] Claims."  *See* Clerk of Court's docket notation for original Complaint (explaining that "Exhibits consisting of Table of Contents, Sections 1 through 10, and two maps are held separately on the shelf in the clerk's office due to the voluminous file size and that there are numerous exhibits on which personal identifiers appear. ... [M]aps are held in the

vault in the clerk's office").

## A.   <u>Leasing Dispute</u>

Siemion is a member of the Crow Tribe.  She and her husband,

George Siemion, have been in business since 1969 as the White Buffalo

Ranch raising bison on the Crow Reservation.  *Court Doc. 25 at ¶ 6*

(citing Administrative Record ("AR"), Siemion Affidavit ("Siemion Aff.")

at 105-07).  Siemion's bison have grazed on ranch property and on

leased individual and tribal grazing lands.  *Id*.

On March 22, 2006, at the Crow Tribe's request and on its behalf,

the Bureau of Indian Affairs ("BIA") advertised the lease sale on 194

tracts of farming and grazing land owned by the Crow Tribe.  *Id. at ¶ 7*.

These tracts included some land subject to leases held by Siemion that

had expired or were about to expire.  *Id*.

The advertisement stated, in relevant parts:

SEALED BIDS will be received until 10:00 A.M., local time,
April 24, 2006 and opened publicly at that time ... for the
leasing of approximately 194 tracts.

*       *       *

In Accordance with Crow Tribal Resolution No. 2001-37,
Item No. 2, "Crow Tribal Ranchers and Farmers, and other

Crow tribal members interested in leasing Crow Tribal lands, must register with the Crow Tribal Leasing Office to be eligible to bid on Tribal Lands.  This serves as a notice that 1st and 2nd preference will be enforced.

\*       \*       \*

... Envelopes of Bids submitted the day of the bid Opening will be stamped at the office of the Superintendent by the Secretary.  Bids will not be accepted after 10:00 a.m. the day of the bid opening.

\*       \*       \*

...  All leases will be for a period not to exceed 5 years.  The Crow Tribe reserves the right to issue Revocable Permits not to exceed one year as deemed necessary.  Term will be adjusted accordingly to ensure uniformity of the lease contracts administered by this agency.

\*       \*       \*

The Crow Tribal Executive Branch will be responsible for the awarding of the tracts in the advertisement.  Bureau of Indian Affairs will supply a duplicate of the abstract to the Tribal leasing office for review and to make recommendations to the Executive Branch upon completion of the Bid Opening ....

\*       \*       \*

In cases of disagreement with the Crow Tribe Executive Branch decision in awarding of leases, participating bidders shall have a right to appeal the decision by submitting a written appeal within sixty (60) days from the date the Executive Branch files the awarding letter with the Crow

Indian Agency, Crow Agency, Montana 59022.

\*      \*      \*

The Superintendent reserves the right to reject any and all bids and to waive informality or technical defect in the bids received whenever such rejection or waiver is in the interest of the Crow Tribe and the United States.

*Id. at ¶¶ 8-10* (citing AR at 706-08).

On April 14, 2006, an addendum was made to the advertisement providing that all bids must meet fair rental value. *Id. at ¶ 11* (citing AR at 703). This addendum also advertised 24 additional tracts for lease and, consistent with the original advertisement, set April 24, 2006, as the deadline for bids. *Id.*

On April 24, 2006, Siemion submitted bids and bid bonds for 11 of the original 194 tracts and bids for 10 of the 24 tracts subsequently added to the lease sale. *Id. at ¶ 14* (citing AR at 126-28). She bid $2.50 per acre. *Id.* Also on April 24, 2006, the BIA transmitted the bids to the Crow Tribe. *Id. at ¶ 15* (citing AR at 607-700).

On May 5, 2006, the BIA received a bid sheet dated May 3, 2006, from Defendant William He Does It, who submitted bids for leases for 8 of the 24 subsequently added tracts. He Does It bid $5.00 per acre.

Siemion's April 24, 2006 bid sheet included bids on the same 8 tracts. BIA copied He Does It's late-submitted bid sheet to the Tribe. *Id. at ¶ 16* (citing AR at 700).

Siemion has claimed that it was not until May 2008 that she first learned from the BIA Superintendent that the Crow Tribe had not awarded leases to her for the tracts on which she bid. *Id. at ¶ 17* (citing AR at 106). On May 28, 2008, Siemion appealed to the Regional Director the BIA Superintendent's decisions to award leases for the tracts to lessees other than Siemion. She asserted that the Regional Director should reverse the BIA Superintendent's decision, declare the leases void, and advertise them anew. *Id. at ¶ 18.*

On July 30, 2008, the BIA Regional Director rejected Siemion's appeal explaining that the Crow Tribe has the exclusive right to grant or award leases on Tribal lands under 25 C.F.R. § 162.207. The Regional Director also explained that the BIA does not have authority to monitor or ensure that the Tribe follows its own laws or ordinances regarding the granting or awarding of leases on Tribal lands. *Id. at ¶ 21* (citing AR at 299-300). The BIA Regional Director advised Siemion

that she could appeal the decision by filing a notice of appeal directly
with the Interior Board of Indian Appeals ("IBIA") within 30 days of
receipt of the Regional Director's decision. *Id. at ¶ 24* (citing AR at
300).

Siemion timely appealed from the Regional Director's decision
regarding lease awards. *Id. at ¶¶ 24 and 25* (citing AR 160-61). On
November 6, 2008, the IBIA issued a Notice of Docketing and Order to
Show Cause directing Siemion to show cause why the Regional
Director's decision should not be summarily affirmed or the appeal
dismissed for lack of jurisdiction because of the well-established
conclusion that the Tribe has the authority to determine farming and
grazing leases on Tribal lands and that the BIA and the IBIA do not.
*Id. at ¶ 25* (citing AR 149-50).

Siemion responded to the show-cause order. *Id. at ¶ 27.* On
February 5, 2009, the IBIA issued its decision affirming the Regional
Director's decision. The IBIA concluded that neither the BIA nor the
IBIA had the authority to address Siemion's challenges or to challenge
the Tribe's award of leases of Tribal lands. *Id. at ¶ 27.* Siemion moved

for reconsideration.  The IBIA denied the motion, concluding that
Siemion raised new arguments that she could have raised before and
that Siemion's newly-submitted affidavit was insufficient to
demonstrate any impropriety in the Tribe's choice of lessees.  *Id. at ¶
29.*

### B.     Bison-Impoundment Dispute

At various times between 2004 and 2008, the BIA repeatedly
informed Siemion that her bison were trespassing on Tribal land
without permission.  *Id. at ¶ 19* (citing AR at 376-439).  In May of 2008,
the BIA posted public notice of its immediate seizure and impoundment
of approximately 200 bison of "undetermined ownership [with] no
brands."  *Id*.  It later was determined that the bison belonged to
Siemion. *Id*. (citing AR at 351-68).

Siemion sought the release of her bison.  She was informed that
she would have to pay penalties and costs associated with the trespass
and impoundment.  Siemion appealed to the BIA Regional Director the
Superintendent's decision to charge her with trespass, to impound her
bison, and to demand payment of penalties and fines.  *Id. at ¶ 20* (citing

AR at 320-23).

On September 5, 2008, the Regional Director rejected Siemion's appeal, noting that: (1) Siemion had received regular trespass notices since November 2004 and had been repeatedly warned, both verbally and in writing, about the trespasses; (2) she was given a reasonable amount of time to remove the bison in trespass but failed to comply resulting in the bisons' impoundment; (3) Siemion did not take corrective action so was assessed penalties, damages, and costs of $16,384.65 in accordance with 25 C.F.R. § 166.812; (4) she received an itemized list of costs for impounding the bison; (5) the Superintendent does not have the authority to grant or award leases on Tribal land, but rather the Tribes or Tribal corporations acting through appropriate officials have the authority to do so; and (6) Siemion had the responsibility to learn the status of her 2006 Tribal lease bids and should have known that her bison were trespassing since she did not have approved leases for the land upon which her bison were trespassing and had received warnings that the bison were trespassing. *Id. at ¶ 23* (citing AR at 264-65).

The BIA Regional Director's decision advised Siemion that she could appeal the decision by filing a notice of appeal directly with the IBIA within 30 days of receipt of the Regional Director's decision. *Id. at ¶ 24* (citing AR at 265). Siemion attempted to appeal this decision. *Id. at ¶¶ 24, 26, and 28.* The IBIA, however, determined that her appeal was untimely and thus dismissed it. *Id. at ¶ 28.*

### C.   Dispute About Destruction of Three Bison Bulls

Siemion alleges that on January 20, 2011, Tribal Fish & Game officers and Defendants William Snell, Cody Wilhelm, and Vernon Hill, together with Fish & Game employee and Defendant Chaz Bends and Vernon Hill's son, Defendant Thomas Hill, found, killed, and butchered three of her bison. *Court Doc. 32 at 18-19.* Meat from the three bison was allegedly distributed to the Fish & Game Director, Defendant Larry Tobacco, and Big Horn County Sheriff, Defendant Pete Molina. *Id. at 19-21.*

### D.   Siemion's Other Attempts to Adjudicate Leasing and Bison Impoundment Disputes

In addition to the foregoing, the record reflects that Siemion also has twice attempted to adjudicate the leasing and bison impoundment

-13-

disputes described above.  First, on May 30, 2008, Siemion, represented by counsel, filed a Complaint in this Court against the U.S. Interior Department, BIA, Regional BIA Director Edward Parisian, and Crow Reservation Superintendent George E. Gover.  *See Siemion v. U.S. Dept. of the Interior, et al.*, CV 08-74-BLG-RFC.  On December 28, 2009, Judge Cebull dismissed the action, without prejudice, for Siemion's failure to comply with the Court's show cause order and for failure to prosecute.  *Id. at Court Doc. 63.*  The Clerk of Court entered Judgment the same day.  *Id. at Court Doc. 64.*

Second, Siemion also pursued an action in the Crow Tribal Court. See "Table of Contents of Exhibits Supporting Plaintiffs [sic] Claims" attached to original Complaint, at § IX Crow Tribal Case CV-09-105, *Siemion v. CH Land & Cattle Company, et al.*, Case No. CV 09-105. The Crow Tribal Court dismissed Siemion's action in an Order filed on April 5, 2011, on several grounds, including that: (1) the Crow Tribe is a necessary party that was not joined; (2) the action was barred by the two-year Tribal statute of limitations; (3) no evidence indicates that the defendants were doing business with Siemion or that the corporate

defendants were parties to any leases between the BIA and any party;

(4) the Crow Tribe's Constitution limits Crow Tribe judicial branch

power to review Crow Tribe executive branch decisions; (5) Siemion

failed to state a claim entitling her to recovery; and (6) the action is

barred by *res judicata* having been the subject of previous actions

brought by Siemion before the BIA Superintendent of the Crow

Reservation, the Regional Supervisor, twice before the IBIA, and before

the Federal District Court.  *Id*.

## II.   DISCUSSION

### A.   Federal Defendants' Motion

#### 1.   Summary of Claims Against Federal Defendants

Respecting Federal Defendants William He Does It ("He Does It"),

Debbie Scott ("Scott"), Clara Hugs ("Hugs"), Vianna Stewart

("Stewart"), and Ty Ten Bear ("Ten Bear"), Siemion alleges:

In Count 3, that He Does It: (1) wrongfully conspired with private

ranch entities to bid on Tribal land on their behalf; (2) did not first

obtain a conflict of interest waiver despite being employed by the

federal government at the time; and (3) "antagonized and intimidated"

Siemion's husband and son while He Does It was on duty for the National Park Service as a snow plow operator. *Court Doc. 32 at 6-7.*

In Count 6, that Scott, while a BIA employee: (1) accepted late bids from He Does It on May 5, 2006; (2) continually harassed Siemion from that point about her bison; (3) wrongfully ordered Siemion's bison rounded up during their calving season under false pretenses; and (4) "defamed, slandered and vilified [Siemion's] immediate family whenever [Siemion], or [her family] sought meetings with [Scott] to come to a civil resolution to this situation." *Id. at 13.*

In Count 7, that Hugs: (1) altered the original abstract of bid letting on April 24, 2006, by adding late bids that He Does It submitted; and (2) forwarded the altered abstract to the Crow Tribe. *Id. at 14.*

In Count 8, that Stewart, as current Superintendent for BIA Crow Agency, and prior Superintendents, failed to adhere to their trust responsibilities respecting the wrongful bison roundup and Tribal and federal land leasing laws. *Id. at 15-16.*

In Count 9, that BIA Agent Ten Bear, on or before April 24, 2006:

-16-

(1) accepted false reports from Defendant Kelly Dee Passes resulting in Siemion's bison herd suffering damages; and (2) made claims to Crow Tribal Fish & Game agents that Siemion's bison actually belonged to no one and were "fair game," which claim resulted in the killing of three of Siemion's bison bulls. *Id. at 17.*

## 2.   **Parties' Arguments**

The Federal Defendants argue that: (1) Siemion's Amended Complaint should be dismissed because it does not adequately set forth the basis for this Court's subject matter jurisdiction, *Fed. Defts' Opening Br. (Court Doc. 44) at 15-18*; (2) the United States should be substituted as Defendant for claims against federal employees Scott, Hugs, Stewart, and Ten Bear, who were acting in the course and scope of their employment, *id. at 18-19*; (3) Siemion's claims related to leases of Tribal land should be dismissed because: (a) the IBIA already ruled that the Tribe grants leases of its lands and the BIA does not grant them; (b) this Court lacks jurisdiction under the Administrative Procedures Act ("APA") to order the Crow Tribe to revoke leases of Tribally-owned land that the Tribe already has awarded to other

parties; (c) the Crow Tribe is an indispensable party that Siemion has not named, but even if she did, the Crow Tribe has sovereign immunity so it cannot be joined as a party; and (d) Siemion's claims relating to the bison-impoundment dispute are time-barred and the IBIA's decision so concluding was neither arbitrary nor capricious, *id. at 20-34*; and (4) Siemion's tort claims related to the leasing dispute and the bison-impoundment dispute are barred by the statute of limitations and any other claims respecting alleged intimidation by He Does It or alleged reference of false trespass claims by Ten Bear are barred for Siemion's failure to exhaust the claims with the appropriate federal agency, *id. at 34-37*.

Siemion responds that the Federal Defendants are sued in their individual capacities in acting beyond the scope of their authority by failing to adhere to their trust responsibilities.  She argues that: (1) the Federal Defendants' motion to substitute the United States should be denied because: (a) Scott accepted late and artificially-inflated bids from He Does It for non-Tribal members; (b) Hugs added these bids to the abstract then submitted them to the Tribe as timely; (c) Stewart is

the current chair holder as Superintendent for the BIA Crow Indian
Agency and has supervisory liability; and (d) Ten Bear told Tribal
authorities that Siemion's bison were trespassing before the bison were
impounded, *Siemion's Resp. Br. (Court Doc. 52) at 2–4, 7-8*; (2) the
Court has jurisdiction because her federal civil rights have been
violated, her property illegally confiscated and her bison ultimately
killed for the benefit of non-Indians, *id. at 7-8*; and (3) the Federal
Defendants violated her Fourteenth Amendment rights, so the Court
should "examine this case as a *Bivens* Action," *id. at 10*.

In reply, the Federal Defendants argue: (1) Siemion still fails to
assert a basis for subject matter jurisdiction, *Fed. Defts' Reply Br.
(Court Doc. 53) at 1*; (2) substitution of the United States is proper
because the U.S. Attorney has certified that these Defendants were
acting within the scope of their employment, which certification is
prima facie evidence that the charged conduct was within the scope of
their employment and state law supports the conclusion that they were
acting within the scope of their employment, *id. at 4-11*; (3) Siemion's
*Bivens* theory claims are subject to dismissal because: (a) she has not

individually served the Federal Defendants as required by Rule 4(I); (b) the only constitutional violation she alleges is violation of the Fourteenth Amendment, which does not apply to federal employees or the federal government, but rather is a restriction on state governments and state action; (c) the claims are time-barred; (d) any claims against Stewart fail because Siemion has alleged no personal involvement by Stewart and vicarious liability is inapplicable in *Bivens* and § 1983 actions; and (e) allegations against Ten Bear are actually common law tort claims disguised as constitutional claims, *id. at 11-16*; and (4) summary judgment is appropriate respecting Siemion's leasing dispute claims, *id. at 16*.

### 3.   <u>Analysis</u>

#### a.   <u>Basis for the Court's Jurisdiction</u>

First, the Court concludes that the Federal Defendants' motion should be denied to the extent it seeks dismissal for failure to set forth the basis for the Court's jurisdiction.  Rule 12(b)(1) permits a party to seek dismissal if the Court lacks jurisdiction over the subject matter of the dispute.  The United States Supreme Court has described the

parameters of federal court jurisdiction as follows:

> Federal courts are courts of limited jurisdiction.  They
> possess only that power authorized by Constitution and
> statute, which is not to be expanded by judicial decree.  It is
> to be presumed that a cause lies outside this limited
> jurisdiction, and the burden of establishing the contrary
> rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *K2*

*America Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1027 (9th Cir.

2011).  "A federal court is presumed to lack jurisdiction in a particular

case unless the contrary affirmatively appears."  *A-Z Int'l v. Phillips*,

323 F.3d 1141, 1145 (9th Cir. 2003) (citations omitted).

With respect to statutory grants of federal subject-matter

jurisdiction, the Supreme Court has noted:

> The basic statutory grants of federal-court subject-matter
> jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.
> Section 1331 provides for "[f]ederal question" jurisdiction, §
> 1332 for "[d]iversity of citizenship" jurisdiction.  A plaintiff
> properly invokes § 1331 jurisdiction when she pleads a
> colorable claim "arising under" the Constitution or laws of
> the United States.  *Bell v. Hood*, 327 U.S. 678, 681-85
> (1946).  She invokes § 1332 jurisdiction when she presents a
> claim between parties of diverse citizenship that exceeds the
> required jurisdictional amount, currently $75,000.  See §
> 1332(a).

*Arbaugh v. Y & H Corporation*, 126 S.Ct. 1235, 1244 (2006).

1244, n.10 (citations omitted).

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Sacramento Metro. Air Quality Management Dist. v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000) (citation omitted). "Where a defendant in its motion to dismiss under [Rule 12(b)(1)] asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law (to be distinguished from a claim that the allegations on which jurisdiction depends are not true as a matter of fact), [the Court] take[s] the allegations in the plaintiff's complaint as true." *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)). A court's review must focus on the allegations of the complaint, and construe the allegations in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

This Court must construe a pro se plaintiff's pleadings liberally

and afford plaintiff the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  Here, Siemion alleges, albeit inartfully, that the named Federal Defendants, while acting as federal employees, committed wrongful acts against her.  See *Court Doc. 32 at 6-7, 13-17*. Affording Siemion the benefit of any doubt respecting her allegations, *Hebbe*, 627 F.3d at 342, the Court concludes that her action should not be dismissed for failure to set forth the basis for the Court's jurisdiction.  This conclusion is bolstered by the discussion that follows respecting Siemion's Westfall Act claims, which arise under federal law and thus invoke the Court's federal question jurisdiction.  *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 435 (1995) (citations omitted).

### b.   <u>Substitution of the United States</u>

Second, the Court concludes that the Federal Defendants' motion should be granted to the extent it seeks to substitute the United States for Scott, Hugs, Stewart, and Ten Bear.  A federal employee is immune from suit under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the so-called "Westfall Act") upon the Attorney General's certification that the employee was acting within

the scope of his or her employment. *Pauly v. U.S. Dept. of Agri.*, 348 F.3d 1143, 1150–51 (9th Cir. 2003) (citing 28 U.S.C. § 2679(d)(1)); *Mesnaoui v. Berlowitz*, 2012 WL 464001, at *1-2 (N.D. Cal., Feb. 13, 2012). "The purpose of this amendment to the Federal Tort Claims Act was to 'remove the potential personal liability of Federal employees for common law torts committed within the scope of their employment, and ... instead provide that the exclusive remedy for such torts is through an action against the United States under the Federal Tort Claims Act.' " *Billings v. United States*, 57 F.3d 797, 799-800 (9th Cir. 1995) (citing H.R. Rep. No. 700, 100th Cong., 2d Sess. 4 (1988)).

Here, the United States Attorney for Montana, under 28 U.S.C. § 2679(d)(1)[3] and 28 C.F.R. § 15.4(a), has certified that Scott, Hugs, Stewart, and Ten Bear were acting within the scope of their employment with the BIA at the time of the incidents alleged in Siemion's Amended Complaint. *Certification of Scope of Employment (Court Doc. 43).* The certification is "prima facie evidence that a federal

---

[3]The U.S. Attorney states in the Certification that he is acting pursuant to 28 U.S.C. § 2679(d)(2), which applies in cases commenced in state court. He more properly is acting under 28 U.S.C. § 2679(d)(1), which applies in cases, such as this one, commenced in federal court.

employee was acting in the scope of her employment at the time of the incident[,]" *Pauly*, 348 F.3d at 1151 (quoting *Billings*, 57 F.3d at 800), but the certification is subject to judicial review. *Gutierriz de Martinez*, 515 U.S. at 436-37. Siemion, as plaintiff, bears the burden of disproving the certification by a preponderance of the evidence. *Pauly*, 348 F.3d at 1151. To disprove the certification, a court may allow a plaintiff to conduct some discovery provided the plaintiff has alleged "sufficient facts that, taken as true, would establish that the defendants' actions exceeded the scope of their employment." *Iknatian v. U.S.*, 2010 WL 3893610, at *2 (D. Mont. Sept. 28, 2010) (quoting *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003)). Permitting such discovery, however, "must be balanced against the congressional intent 'to protect federal employees from the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ.' " *Id.*, at *3 (quoting *Brown v. Armstrong*, 949 F.2d 1007, 1011 (8th Cir. 1991)).

The Court first must determine whether Siemion appropriately may be afforded an opportunity to conduct discovery to attempt to

disprove the U.S. Attorney's certification.  For two reasons, the Court
concludes that it would not be appropriate to permit her to conduct
discovery into whether Scott, Hugs, Stewart, and Ten Bear were acting
within the scope of their employment.

First, Siemion has not alleged any facts, taken as true, that would
establish that the employees' actions, as she has characterized them,
exceeded the scope of their employment.  As noted, Siemion alleged in
her Amended Complaint that: (1) Scott accepted late bids, "harassed"
Siemion about her trespassing bison, ordered the bison rounded up, and
"defamed, slandered and vilified [Siemion's] immediate family
whenever [Siemion], or [her family] sought meetings with [Scott]"
concerning these issues; (2) Hugs added late bids to the abstract and
forwarded the abstract to the Crow Tribe; (3) Stewart generally failed
to adhere to her trust responsibilities concerning the leasing dispute
and bison impoundment dispute; and (4) Ten Bear accepted a report
about Siemion's trespassing bison and told others some bison were "fair
game." *Court Doc. 32 at 13-17.*  None of these allegations, even taken
as true, indicate that these Federal Defendants exceeded the scope of

their employment with their actions.  All alleged actions were taken as part of the employment of each defendant, or were acts that did not directly affect Siemion.

Second, as a practical matter, it is highly unlikely that discovery on this limited issue would materially advance this litigation toward resolution.  The vast majority of the acts alleged occurred several years ago and, as noted above, have been the subject of other actions by Siemion both in this Court and in other forums.  It is reasonable to conclude, based on the record, that discovery at this point would not unearth facts, not already known to Siemion, that would be relevant to the issue of whether these Federal Defendants' actions exceeded the scope of their employment with the federal government.

The Court next must determine whether the U.S. Attorney's certification should stand.  "State law governs the scope-of-employment inquiry under the Westfall Act."  *Pauly*, 348 F.3d at 1151 (citing *McLachlan v. Bell*, 261 F.3d 908, 911 (9th Cir. 2001)).  Since 1940, when the Montana Supreme Court decided *Keller v. Safeway Stores*, 108 P.2d 605 (Mont. 1940), Montana courts generally have looked to guidance

-27-

from the Restatement of the Law of Agency in addressing whether an

employee was acting within the scope of employment when he or she

committed acts forming the basis of a plaintiff's claims.  The question

most commonly arises when a plaintiff seeks to impose vicarious

liability on an employer for an employee's wrongful acts under the

agency law doctrine of respondeat superior.  In *Keller*, the court stated:

> [A]ccording to the Restatement of the Law of Agency, section
> 229: "(1) To be within the scope of the employment, conduct
> must be of the same general nature as that authorized, or
> incidental to the conduct authorized. (2) In determining
> whether or not the conduct, although not authorized, is
> nevertheless so similar to or incidental to the conduct
> authorized as to be within the scope of employment, the
> following matters of fact are to be considered: (a) Whether or
> not the act is one commonly done by such servants; (b) the
> time, place and purpose of the act; [ ... ] (f) whether or not
> the master has reason to expect that such an act will be
> done; and (I) the extent of departure from the normal
> method of accomplishing an authorized result."

108 P.2d at 610 (quoting the RESTATEMENT OF THE LAW OF AGENCY, §

229); see also *Kornec v. Mike Horse Mining & Milling Co.*, 180 P.2d 252

(Mont. 1947).

The Montana Supreme Court also has looked to Section 228 of the

Restatement of the Law of Agency (Second).  *Maguire v. State*, 835 P.2d

755, 758 (Mont. 1992).  That section, which was subsequently

superseded by the Third Restatement, provides:

> (1)  Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master, and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2)  Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Under Montana law, "[w]hether an act was within the scope of

employment is generally a question of fact; however, it is a question of

law for the court when only one legal inference may reasonably be

drawn from the facts."  *Denke v. Shoemaker*, 198 P.3d 284, 302 (Mont.

2008) (citation omitted).

Applying the foregoing authority based on Siemion's allegations

against these Federal Defendants as outlined above, the Court

concludes that the U.S. Attorney's certification should stand.  Siemion

has submitted no evidence that disproves the U.S. Attorney's

certification.  It is, of course, her burden to show by a preponderance of

the evidence that the certification should not stand.  She has not met

her burden.  Also, all of the allegations stem from the named Federal

Defendants' conduct taken pursuant to their employment.  Siemion has

not alleged, nor has she presented any evidence to demonstrate, that

any act by any of these Federal Defendants was done in furtherance of

their own personal interest or beyond what is ordinarily incidental to

duties performed on behalf of their employer.  On this record, the only

reasonable legal inference that may be drawn is that the named

Federal Defendants were acting within the scope of their employment.

Thus, the Court recommends that the Federal Defendants' motion, to

the extent it seeks to substitute the United States for Scott, Hugs,

Stewart, and Ten Bear, should be granted.

        **c.**    **Tort Claims Stemming from Bison-
Impoundment Dispute, Claims Against He**

**Does It for Intimidation, and Allegation
Against Ten Bear for Referring False
Trespass Claims**

To the extent that Siemion's allegations assert tort claims against

Scott, Hugs, Stewart, and Ten Bear, the Court recommends that they

be dismissed.  Should the district court accept the recommendation

discussed above that the United States be substituted for Scott, Hugs,

Stewart, and Ten Bear, Siemion's claims against them become claims

against the United States and fall under the Federal Tort Claims Act

("FTCA").

The FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq.,

> provides a remedy for persons injured by the tortious
> activity of an employee of the United States, where the
> employee was "acting within the scope of his ...
> employment."  28 U.S.C. § 1346(b).  A FTCA action "shall
> not be instituted" against the United States unless the
> claimant first presents the claim to the "appropriate Federal
> agency" and the claim is denied or the agency fails to make a
> final disposition of the claim within six months.  28 U.S.C. §
> 2675(a); *McNeil v. United States*, 508 U.S. 106, 113, 113
> S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("The [Federal Tort
> Claims Act] bars claimants from bringing suit in federal
> court until they have exhausted their administrative
> remedies.") "The claim requirement of § 2675(a) is a
> jurisdictional limitation." *Meridian Intern. Logistics, Inc. v.
> United States*, 939 F.2d 740, 743 (9th Cir. 1991) (citing *Blain
> v. United States*, 552 F.2d 289, 291 (9th Cir. 1977)).

-31-

*Manulid v. Sycuan Casino & Resort*, 2010 WL 5349849, at *3 (S.D. Cal., Dec. 20, 2010).

The limitations period for claims against the United States is set forth in 28 U.S.C. § 2401(b), which provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

In the case at hand, as noted above, Siemion previously filed an FTCA action in this Court under CV 09-87-BLG-RFC-CSO.  The action was based on a claim that Siemion had filed with the U.S. Department of the Interior as required by the FTCA concerning the rounding up and impounding of bison.  *See CV 09-87-BLG-RFC-CSO at Court Doc. 1, Ex. H.*  The Interior Department denied the claim on January 13, 2009.  *CV 09-87-BLG-RFC-CSO, Court Doc. 1, at Ex. I.*  On July 10, 2009, Siemion timely filed her action in this Court.  *CV 09-87-BLG-RFC-CSO at Court Doc. 1.*  On January 14, 2010, Judge Cebull dismissed Siemion's case, without prejudice, for failure to prosecute.  *CV 09-87-BLG-RFC-CSO at Court Doc. 16.*

The action now before the Court was initially filed on October 29, 2011. *Court Doc. 1.* Therefore, it was filed well beyond the limitations period imposed by 28 U.S.C. § 2401(b). Siemion has offered no evidence nor argument that would compel or persuade the Court to toll the limitations period on tort claims stemming from the bison-impoundment dispute. Thus, the Court will recommend that the motion to dismiss be granted with respect to such claims.

Respecting Siemion's claims against: (1) He Does It for allegedly antagonizing and intimidating Siemion's husband and son while He Does It was on duty as a snow plow operator for the National Park Service, *Court Doc. 32 at 6-7*; and (2) Ten Bear for allegedly accepting and referring false bison trespass reports to Crow Tribal Fish & Game agents, *Court Doc. 32 at 17*, the Court will recommend that the claims be dismissed. Siemion has not alleged that, before filing these claims in this Court, she first submitted them to the appropriate Federal agency as required by 28 U.S.C. § 2675(a). This requirement is jurisdictional. See *Meridian International Logistics v. U.S.*, 939 F.2d 740, 743 (9th Cir. 1991); *Blain v. United States*, 552 F.2d 289, 291 (9th

Cir. 1977).  Thus, the Court will recommend that the claims be dismissed.

### d.   <u>Leasing Dispute Claims</u>

The Court turns next to Siemion's claims against the Federal Defendants alleging that she was wrongfully deprived of Crow Tribal land leases to which she was entitled.  As noted above, the BIA Regional Director rejected the appeal in which Siemion claimed that the Crow Tribe Superintendent wrongfully awarded leases to others instead of to her.  The BIA Regional Director explained that the Crow Tribe has the exclusive right to grant or award leases on Tribal lands under 25 C.F.R. § 162.207 and that the BIA has no authority to monitor or ensure that the Tribe follows its own laws and ordinances regarding the granting or awarding of leases on Tribal lands.  The IBIA affirmed this decision on February 5, 2009, concluding that neither the BIA nor the IBIA had authority to address Siemion's challenges or to challenge the Tribe's award of leases of Tribal lands.

Here, Siemion essentially seeks judicial review of the IBIA's decision.  Under the Administrative Procedures Act ("APA"), a court

may set aside an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Court's review is limited, and the Court is not permitted to substitute its judgment for that of the agency. *Earth Island Institute v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010). Reversal of an agency decision under this standard is allowed only if:

> the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* at 469.

Here, the IBIA's decision and reasoning are well-detailed in the record. *Court Doc. 25 at ¶ 21* (citing AR at 299-300), *¶ 25* (citing AR 149-50), *and ¶ 27* (quoting *Siemion v. Rocky Mountain Regional Director, BIA*, 2009 WL 475300, 48 IBIA 249, 258 (2009)). In response to the Federal Defendants' motion, Siemion argues only that "[i]n this case all decisions by Debbie Scott, Clara Hugs and Ty Ten Bear have been arbitrary and capricious, an abuse of discretion, and not according to law. So therefore I, Nelvette Siemion respectfully ask that this

-35-

honorable court deny Defendants Motion for Summary Judgment."
*Court Doc. 52 at 8* (emphasis omitted).

Having reviewed the IBIA's decision, and in light of Siemion's
failure to come forward with persuasive argument or authority
challenging the decision, the Court concludes that the IBIA's decision
was not arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with the law.  Thus, the Court will recommend that the
Federal Defendants' motion be granted to the extent it seeks dismissal
of Siemion's leasing dispute claims.

### B.   Tribal Defendants' Motion

#### 1.   Summary of Claims Against Tribal Defendants

Respecting Tribal Defendants Cedric Black Eagle ("Black Eagle"),
Larry Tobacco ("Tobacco"), Vernon Hill ("V. Hill"), Bill Snell ("Snell"),
Cody Wilhelm ("Wilhelm"), Chaz Bends ("Bends"), Thomas Hill ("T.
Hill"), and Diane Cabrera ("Cabrera"), Siemion alleges:

In Count 10, that Snell, Wilhelm, Bends, V. Hill, and T. Hill: shot
and killed three of her bison herd bulls, butchered them, and
distributed the meat to Defendant Pete Molina and other unknown

persons.  *Court Doc. 32 at 18.*

In Count 11, that Tobacco, director of the Tribal Fish & Game Department:  (1) condoned the acts described in Count 10; and (2) received some of the meat from the slaughtered bison.  *Id. at 19-20.*

In Count 13, that Cabrera, as Crow Tribal Prosecutor: (1) failed to prosecute Defendant Kelly Dee Passes for assaulting her husband; and (2) failed to prosecute any Defendants named in Counts 10 and 11 for killing her bison bulls.  *Id. at 21-22.*

In Count 14, that Black Eagle, as Crow Tribal Chairman: (1) "failed in his official capacity ... to enforce Crow Tribal Laws specifically, but not limited to, CLB 09-04[ ]"; (2) failed to protect Siemion "from the malicious civil attacks on [her] and [her] Bison herd committed by non-Indians and BIA employees"; and (3) "outright refused to do anything about killings of [her] Bison by Crow Tribal Fish & Game employees, on the Crow Indian Reservation."  *Id. at 22-23.*

### 2.    Parties' Arguments

The Tribal Defendants argue that: (1) Siemion's Amended

Complaint should be dismissed under Rule 12(b)(1) because it does not adequately set forth the basis for this Court's subject matter jurisdiction, *Tribal Defts' Opening Br. (Court Doc. 42-1) at 7-8*; (2) the Crow Tribe enjoys sovereign immunity that extends to each of the named Tribal Defendants and bars this suit against them, *id. at 8-9*; (3) Defendant Black Eagle, as an elected official of a federally-recognized Indian Tribe, is immune from suit under the Tribe's sovereign immunity, *id. at 9-10*; (4) Defendant Cabrera, sued in her capacity as Crow Tribal Prosecutor, is immune as a Tribal government officer, *id. at 10*; (5) Defendants Tobacco, Snell, Wilhelm, Bends, V. Hill, and T. Hill, also are immune because they acted as Crow Tribal Game Wardens according to Siemion's allegations, and thus were acting as Tribal government officers, *id.*; and (6) Siemion has failed to state a claim on which relief can be granted under Rule 12(b)(6) because: (a) she has alleged no facts against Defendant Black Eagle providing a basis for recovery against a Tribal government elected official accused of failing to enforce Tribal law and protect a Tribal member nor facts linking any act to her alleged injuries; (b) Defendant Cabrera had

-38-

prosecutorial discretion so she has immunity from the claims Siemion alleges against her and Siemion has not alleged violation of due process rights; and (c) the other Tribal Defendants were acting in their official capacity and performing their duties pursuant thereto, thus entitling them to immunity, *id. at 11-13*.

Siemion responds that: (1) this Court has jurisdiction because federal employees are named and "there is no other court that has jurisdiction in this case when the United States or its officials are named and also when federal civil rights have been violated specifically the 14th [A]mendment of the United States Constitution ... [and] violations of the Indian Civil Rights Act, 25 U.S.C. [§] 1302(5) and (8)[,]" *Siemion's Resp. Br. (Court Doc. 51) at 3-4*; (2) Tribal Defendants do not have sovereign immunity when they act beyond the scope of their enumerated powers and when acting in concert with federal officials as they were here, *id. at 6-7*; and (3) she has "clearly stated [her] claims and defendants have avoided the facts in this case[,]" as they are set forth in the exhibits submitted with the original Complaint, *id. at 7*.

3.   **Analysis**

The Court has carefully considered the parties' arguments and relevant authority and concludes that the Tribal Defendants' motion to dismiss should be granted.  For the reasons discussed below, the Court recommends that Siemion's claims against Black Eagle and Cabrera be dismissed because they are immune from suit in their capacities as Tribal officials.  The Court also recommends that Siemion's claim against Tribal Defendants Tobacco, Snell, Wilhelm, Bends, V. Hill, and T. Hill be dismissed for lack of subject matter jurisdiction.

First, the Court concludes that the Crow Tribe's sovereign immunity extends to Black Eagle and Cabrera.  By the express allegations of Siemion's Amended Complaint, Black Eagle and Cabrera are Tribal officials, neither of whom is a state or federal actor in this case.[4]  Because Indian Tribes are separate and distinct sovereignties, "no action under 42 U.S.C. § 1983 can be maintained in federal court

---

[4]Siemion once refers to Cabrera in the Amended Complaint as "Special Assistant to the United States Attorney[,]" *Court Doc. 32 at 22*, but does not indicate how that alleged status gives rise to her claims that Cabrera failed, as Crow Tribal Prosecutor, to prosecute an alleged assault on Siemion's husband or failed to prosecute other Tribal Defendants for killing her bison.

for persons alleging deprivation of constitutional rights under color of tribal law." *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979, 982 (9th Cir. 1983).  Also, "Indian tribes are neither states, nor part of the federal government, nor subdivisions of either." *N.L.R.B. v. Pueblo of San Juan*, 276 F.3d 1186, 1192 (10th Cir. 2002) (en banc).  Unless Congress authorizes the lawsuit or sovereign immunity has been waived, Indian tribes, tribal entities, and persons acting on a tribes' behalf in an official capacity enjoy sovereign immunity against suit.  *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998) (tribe); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) (tribal entity); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479-80 (9th Cir. 1985) (tribal officials). "Absent congressional abrogation or explicit waiver, sovereign immunity bars suit against an Indian tribe in federal court." *Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007) (citing *Kiowa Tribe*, 523 U.S. at 754).  "This immunity protects tribal officials acting within the scope of their valid authority." *Id*. (citing *Hardin*, 779 F.2d at 479-80).  Such immunity

"does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law." *Burlington Northern R.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991), overruled on other grounds by *Big Horn County Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000). But if tribal sovereign immunity exists, it precludes subject matter jurisdiction in an action against an Indian tribe. *Lewis v. Norton*, 424 F.3d 959, 961 (9th Cir. 2005).

Here, Siemion does not expressly seek prospective relief against tribal officers allegedly acting in violation of federal law. And, although Siemion states in her Amended Complaint that she is suing Black Eagle "as an individual[,]"[5] see *Court Doc. 32 at 24*, she has alleged neither unconstitutional conduct by him nor the application of an unconstitutional law. The mere fact that a tribal officer is sued as an individual, without more, does not establish that he or she lacks the protection of Tribal sovereign immunity. *See, e.g., Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479-80 (9th Cir. 1985) (even though plaintiff named defendants in their individual capacities, tribal

---

[5]Siemion makes no such allegation respecting Cabrera.

sovereign immunity applied because they were "acting within the scope of their delegated authority").  Because Siemion's claims against Black Eagle and Cabrera stem from her allegations that they failed to perform duties as Tribal officials, they are protected by Tribal sovereign immunity.  *Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d at 1091 (citing *Hardin*, 779 F.2d at 479-80).

Next, it is unclear at this juncture whether the Crow Tribe's sovereign immunity extends to Tribal Defendants Tobacco, Snell, Wilhelm, Bends, V. Hill, and T. Hill.  Although Siemion has alleged that they were acting as individuals, *see Court Doc. 32 at 19 and 20,* she also alleges that they were "Crow Tribal Fish & Game employees" who participated in "the outright killings" of her three bison.  *Court Doc. 32 at 23.*  To the extent she alleges that they acted in their official capacities, that is, on Ten Bear's information that the bison were unowned and with the Tribal Fish & Game Director Tobacco's approval, they were performing their duties as Tribal officers and are immune for the same reasons stated above respecting Black Eagle and Cabrera.

But to the extent that Siemion alleges that these named Tribal

-43-

Defendants acted beyond their valid authority, Tribal sovereign immunity may not extend to them.  In this event, Siemion's claim against them is appropriately dismissed for lack of subject matter jurisdiction for a different reason.  Civil jurisdiction over activities on reservation lands "presumptively lies in the tribal courts unless limited by federal statute or a specific treaty provision.  Considerations of comity require the exhaustion of tribal remedies before the claim may be addressed by the district court."  *Wellman v. Chevron*, 815 F.2d 577, 578 (9th Cir. 1987) (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S. Ct. 971, 976-977, 94 L. Ed. 2d 10 (1987); *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857(1985)).

Once all tribal remedies are exhausted, a federal district court has jurisdiction under 28 U.S.C. § 1331 to review the tribal court's finding of tribal jurisdiction.  *LaPlante*, 107 S. Ct. at 978; *National Farmers Union Ins.*, 471 U.S. at 857.  If the Court finds that the tribal court system properly exercised jurisdiction over the controversy, proper deference to the tribal court precludes relitigation of the issues raised and resolved in the tribal court.  See *LaPlante*, 480 U.S. 9, 107 S.

-44-

Ct. 971, 94 L. Ed. 2d 10.

Siemion's claim against these Tribal Defendants involves their killing of three of her bison on the reservation by tribal officers and members.  In civil cases arising between Indians, or against an Indian defendant in an action arising in Indian country, tribal jurisdiction usually will be exclusive.  *Fisher v. District Court*, 424 U.S. 382, 386-89 (1976); *Williams v. Lee*, 358 U.S. 217, 223 (1959).  Indian tribes "exercise inherent sovereign authority over their members and territories."  *Oklahoma Tax Com'n v. Citizen Band of Potawatomi Indian Tribe*, 498 U.S. 505, 511 (1991).

Here, the record does not reflect that Siemion has sought relief in Tribal Court for the claim she asserts here against these named Tribal Defendants.  Her Tribal Court case involved only the leasing dispute. See "Table of Contents of Exhibits Supporting Plaintiffs [sic] Claims" attached to original Complaint, at § IX Crow Tribal Case CV-09-105, *Siemion v. CH Land & Cattle Company, et al.*, Case No. CV 09-105. Thus, she has not exhausted her tribal court remedies.  Accordingly, the Court will recommend that her claim against these Tribal

Defendants be dismissed.

## C.  Private Defendants' Motion

### 1.  Summary of Claims Against Private Defendants

Respecting Private Defendants Patricia Bugas-Harris ("Bugas-Harris"),  Martin Anseth ("Anseth"), William He Does It ("He Does It"), Phoebe Knapp-Warren ("Knapp-Warren"), Paul Warren ("Warren"), Sam Redding ("Redding"), and Leland Walking Bear ("Walking Bear"), Siemion alleges:

In Count 1, that Bugas-Harris and Anseth, as owner and manager, respectively, of CH Land & Cattle Co., on or before April 24, 2006: (1) conspired with Defendants He Does It, Walking Bear, and Kelly Dee Passes ("Passes") "to deprive [her] of her right to lands that she has historically leased for her sole benefit" under Crow Tribal Laws; (2) that Bugas-Harris paid He Does It and Walking Bear to lease Crow Tribal land for her benefit; and (3) that Bugas-Harris directly or through Anseth conspired with Passes to illegally obtain Tribal leases and to "harass, assault, and intimidate [the] entire male portion of [Siemion's] family[.]" *Court Doc. 32 at 2-3.*

In Count 2, that Knapp-Warren, Warren, and Redding, as owners and manager, respectively, of Grapevine Ranch, Inc., on or before April 24, 2006: (1) conspired with He Does It, Walking Bear, and Passes "to deprive [her] of her right to lands that she has historically leased for her sole benefit" under Crow Tribal Laws; (2) that Knapp-Warren and Warren paid He Does It and Walking Bear to lease Crow Tribal land for the benefit of Grapevine Ranch; and (3) that Knapp-Warren and Warren directly or through Redding conspired with Passes to illegally obtain Tribal leases and to "harass, assault, and intimidate [the] entire male portion of [Siemion's] family[.]" *Id. at 4-5.*

In Count 4, that Walking Bear: (1) conspired with and was paid by the owners of CH Land & Cattle Co. and Grapevine Ranch to deprive her of lands that she historically leased by "fronting" for them; (2) transferred leases that he erroneously obtained to Passes; and (3) assaulted her husband "numerous times in the past 10 years." *Id. at 8-9.*

## 2. **Parties' Arguments**

The Private Defendants argue that: (1) Siemion's Amended

Complaint should be dismissed for failure to satisfy Rule 8(a)(1)

because it sets forth no allegations that would confer jurisdiction on

this Court, *Private Defts' Opening Br. (Court Doc. 46) at 7-8*; (2) the

action should be dismissed under Rule 12(b)(1) for lack of subject

matter jurisdiction because: (a) Siemion previously brought claims

adjudicated before other tribunals so that she now is "barred from

bringing this action by the principles of res judicata and collateral

estoppel[,]" *id. at 8-9* (emphasis omitted); and (b) her claims related to

the leasing dispute are barred under the applicable statute of

limitations, *id. at 9-10*; (3) the action should be dismissed under Rule

12(b)(7) for failure to join a party under Rule 19 because the Crow Tribe

must be named as a party defendant on her leasing dispute claims and

the Tribe is not named, *id. at 10-11*; (4) her leasing dispute claims are

barred because she failed to timely appeal the agency's denial of her

claims, *id. at 11*; (5) Siemion failed to timely name the United States as

a defendant against whom she is asserting conspiracy claims, *id. at 11-*

*12*; (6) her claims against the Private Defendants are subject to

dismissal under Rule 21 for "misjoinder of parties" because they had no

responsibility to or contractual relationship with Siemion and she has not alleged specifically any unlawful activity by the Private Defendants, *id. at 12*; (7) Siemion's Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim against the Private Defendants upon which relief can be granted because neither the leasing dispute claims, the bison impoundment claims, nor the bison slaughter claims impose liability upon the Private Defendants, *id. at 12-14*; (8) should Siemion be permitted to proceed, the Court should issue an order under Rule 12(e) directing her "to make a more definite statement of the factual allegations sufficient to demonstrate that [she] has a cause of action against [the Private] Defendants[,]" *id. at 14-17*; and (9) Siemion's action was brought for an improper purpose under Rule 11(b)(1) subjecting her to sanctions, *id. at 17-18*. The Private Defendants also seek a hearing on these defenses under Rule 12(i). *Id. at 18-19*.

Siemion did not respond to this motion.

### 3. __Analysis__

The Private Defendants filed their motions on February 17, 2012.

*Court Doc. 45.* Siemion's response to this motion was due on March 9, 2012. *Local Rule 7.1(d)(1)(B)* ("Responses to motions to dismiss, . . . must be filed within twenty-one (21) days after the motion was filed.").

As noted, Siemion failed to respond to the Private Defendants' motion or to seek an extension of time to respond. The time for doing either passed more than a full month ago. When a party opposing a motion fails to file a response, as here, the Court has the discretion to deem the failure "an admission that the motion is well-taken." *Local Rule 7.1(d)(1)(B)*.

Before recommending that the Private Defendants' motions to dismiss be granted, the Court must consider five factors: "(1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases [on] their merits; and (5) the availability of less drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). In *Ghazali*, the Ninth Circuit affirmed a dismissal, pursuant to a district court local rule similar to

Local Rule 7.1(d)(1)(B), for failure to respond to a Rule 12(b)(6) motion to dismiss.  Courts reached similar results in *Lund v. Brenner*, 163 F.3d 606 (9th Cir. 1998) (table) and *Roberts v. United States*, 2002 WL 1770930 (D. Nev. 2002).

Like the authorities above, after consideration of the *Henderson* factors, the Court concludes that dismissal of Siemion's claims against the Private Defendants is appropriate.  The first factor weighs strongly in favor of dismissal.  At this juncture in the proceedings, dismissal will promote the public's interest in expeditious resolution of litigation.

The second factor weighs strongly in favor of dismissal.  Siemion's failure to respond to the Private Defendants' motions undermines the Court's ability to expedite resolution of the action.  *See Saba v. Caplan,* 2010 WL 4235473 (N.C. Cal. 2010) (motion to dismiss granted where plaintiff failed to respond).  Such non-compliance with Court rules inherently delays resolution of the case and insures detriment to other litigants.  This Court's ability to manage its docket is enhanced when, in the exercise of its discretion, it is permitted to summarily dispose of claims brought by litigants, such as Siemion here, who fail to respond

to dispositive motions or to follow the Court's Local Rules.

The third factor weighs in favor of dismissal.  The Private Defendants in this action should suffer no prejudice by the dismissal of Siemon's claims against them.

The fourth factor generally weighs against dismissal for failure to file a brief.  This policy lends little support, however, to those parties responsible for moving a case forward but whose conduct impedes progress in that direction.   In *Metcalf v. Select Portfolio Servicing, Inc.,* 2011 WL 1768755 (S.D. Cal. 2011), the court noted that "[a] case cannot move toward resolution on the merits when Plaintiff fails to defend his case against a Rule 12(b)(6) and (e) motion."  The Court is not required, as it would be in granting a motion for summary judgment under these circumstances, to consider the sufficiency of the Private Defendants' motions to dismiss.  *See Ghazali*, 46 F.3d at 54; *see also Henry v. Gill. Ind., Inc.*, 983 F.2d 943, 949-50 (9th Cir. 1993).

Finally, as to the fifth factor, it is possible that the Court could adopt less drastic sanctions by, *sua sponte*, ordering Siemon to file a response.  But the Court is reluctant to do so for the following reasons.

First, the other factors weigh strongly in favor of dismissing the claims against the Private Defendants.  Second, Siemion brought this action.  Although the Court must afford pro se litigants' pleadings liberal construction, such litigants are nevertheless "bound by the rules of procedure" the same as other litigants.  *Ghazali*, 46 F.3d at 54.  By bringing this action, Siemion assumed an affirmative responsibility to participate in the proceedings in accordance with the rules.  Her failure to do so with respect to the Private Defendants imposes a strain on judicial resources and, more significantly, works unfair prejudice upon the Private Defendants, who were  compelled to appear to defend themselves.  The Court concludes that the fifth *Henderson* factor weighs in favor of dismissal.

Thus, the Court concludes after consideration of the *Henderson* factors that the motions to dismiss brought by the Private Defendants should be granted.  In so recommending, the Court notes that deficiencies in Siemion's Amended Complaint cannot be cured by further amendment in light of the type of action and the nature of relief sought.

**D.**   **Defendant Molina's Motion**

        **1.**   **Claim Against Defendant Molina**

Respecting Defendant Pete Molina ("Molina"), Siemion alleges in

Count 12, *in toto*:

> On January 20, 2011, Pete Molina came into possession of a
> Bison carcass that belonged to me.  Pete Molina failed to
> report to the proper authorities, or to anybody for that
> matter, that he was in possession of meat, for approximately
> 30 days, that belonged to me, Nelvette Siemion, even after it
> had been publicly printed in the local newspaper that the
> defendants named in count 10 of this complaint had killed
> my Bison.  Pete Molina kept my meat and let it rot.

*Court Doc. 32 at 20-21*.

        **2.**   **Parties' Arguments**

Molina argues that Siemion's Amended Complaint, to the extent

it asserts claims against him, should be dismissed for lack of subject

matter jurisdiction.  *Court Doc. 35 at 2.*  Molina advances two principal

arguments.  First, he argues that the Amended Complaint does not

adequately set forth the basis for this Court's subject matter

jurisdiction.  *Id. at 2-4.*  Second, he argues that the facts alleged, even if

taken as true, do not support a finding that the Court has subject

matter jurisdiction.  *Id.*

In response, Siemion advances three arguments opposing Molina's motion. *Court Doc. 47 at 2-9.* First, she argues that she has named as Defendants employees of the United States of America and "there is no other court that has jurisdiction to hear cases where parties named are the United States or its officials." *Id. at 2.*

Second, Siemion urges the Court to take "judicial notice" of two things: (1) a police report that she maintains shows that Molina "came into possession of one of my Bison carcasses" as admitted by Defendants Vernon Hill and Cody Wilhelm, *id.*; and (2) the fact that she owned the three Bison that were killed on January 20, 2011. *Id. at 2-3.*

Finally, Siemion argues that her allegations against Molina are brought as a civil rights action under 42 U.S.C. § 1983. *Id. at 3-9.* She argues that her action against Molina is not subject to a heightened pleading standard and thus the Court should deny Molina's motion to dismiss. *Id.*

In reply, Molina argues that Siemion's Amended Complaint identifies him only as a respondent and "does not designate [him] as

anything other than an individual." *Court Doc. 49 at 2*.  He argues that the Amended Complaint "is completely devoid of any allegation of the grounds for subject matter jurisdiction especially in regard to the allegations against [him] found in Count 12 of the Amended Complaint." *Id*.  Molina argues that there are no factual allegations in the Amended Complaint setting forth a basis for this Court's subject matter jurisdiction against him and no facts alleged that give rise to a civil rights claim against him.  *Id. at 2-3*.

### 3.   Analysis

Siemion's Amended Complaint does not state the basis for the Court's subject matter jurisdiction respecting her claim against Molina. She also has failed to allege any facts that would give rise to this Court's subject matter jurisdiction over her claim against Molina. Siemion has alleged in Count 12 only that Molina "came into possession of a Bison carcass" that belonged to her and that he failed to report that to "the proper authorities[.]" *Court Doc. 32 at 21*.  Nothing in these allegations, as they are presently stated and even if they are assumed to be true, gives rise to this Court's subject matter jurisdiction.

Additionally, the claim against Molina is subject to dismissal for the same reasons set forth above respecting the recommended dismissal of Siemion's claim against Tribal Defendants Tobacco, Snell, Wilhelm, Bends, V. Hill, and T. Hill.  On the current record, the Court concludes that Siemion has not sought relief in Tribal Court for the claim she asserts against Molina.  As noted, her Tribal Court case involved only the leasing dispute.  See "Table of Contents of Exhibits Supporting Plaintiffs [sic] Claims" attached to original Complaint, at § IX Crow Tribal Case CV-09-105, *Siemion v. CH Land & Cattle Company, et al.*, Case No. CV 09-105.  Thus, she has not exhausted her tribal court remedies.  Accordingly, the Court will recommend that her claim against Molina be dismissed.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS RECOMMENDED** that:

1.   The motion to dismiss under Rule 12(b)(1) filed by Defendant Pete Molina, *Court Doc. 34*, be GRANTED for the reasons described herein;

2.   The motion to substitute the United States, to dismiss under Rules 12(b)(1), (6), and (7), and for summary judgment under Rule 56(a) (on Administrative Procedure Act Claims) filed by Defendants Debbie Scott, Clara Hugs, Vianna Stewert, Ty Ten

Bear, and William He Does It, *Court Doc. 41,* be GRANTED as set forth above;

3. The motion to dismiss under Rules 12(b)(1) and (6) filed by Defendants Cedric Black Eagle, Larry Tobacco, William F. Snell, III, Cody Wilhelm, Chaz Bends, Vernon Hill, Thomas Hill, and Diane Cabrera, *Court Doc. 42,* be GRANTED for the reasons described herein; and

4. The motion to dismiss under Rules 12(b)(1), (6), and (7), for misjoinder of parties under Rule 21, for a more definite statement under Rule 12(e), and for a determination that the action was brought for an improper purpose under Rule 11(b)(1) filed by Defendants Patricia Bugas-Harris, Martin Anseth, William He Does It, Phoebe Knapp-Warren, Paul Warren, Sam Redding, and Leland Walking Bear, *Court Doc. 45,* be GRANTED for the reasons described herein.

Also, **IT IS ORDERED** that Siemion's motion for a hearing on Defendant Molina's motion to dismiss, *Court Doc. 55*, is DENIED.

NOW, THEREFORE, **IT IS ORDERED** that the Clerk shall serve a copy of the Order and Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations portion of this document must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 24th day of April, 2012.

                              /S/ Carolyn S. Ostby
                              United States Magistrate Judge